OPINION
Appellant, William E. Kidon, appeals the judgment of the Geauga County Court of Common Pleas which awarded appellee, Barbara J. Kidon, appellant's one-half interest in certain real and personal property in lieu of child support, spousal support and attorney fees. For the reasons that follow, we affirm the judgment of the trial court.
In November 1996, appellant and appellee were granted a divorce in an unrelated action. Prior to that time, in October 1994, appellee had filed a complaint for legal separation from her then-husband, appellant. In that complaint, appellee asked the court to make an equitable division of both real and personal property. The parties had two sons: Alan, born on February 17, 1987 and David, born on October 15, 1990. A judgment entry of legal separation was filed, apparently by agreement of the parties, on September 8, 1995 ("the 1995 entry"). The entry indicated:
 "The Court further finds that the parties have agreed that they will continue to co-own the following marital assets:
"1. The tractor and equipment[.]
 "2. House, barn and 5 acres of property located at: 12444 Pearl Road, Chardon, Geauga County, Ohio.
"3. 12.5 acres of property adjoining Pearl Road.
 "4. 25 acres of property located on Radcliff Road, Chardon, Geauga County, Ohio."
The 1995 entry of legal separation indicated that the court would retain continuing jurisdiction over any jointly held property, including the above real and personal property, in order "to deal with conflicts which may arise regarding the handling or disposition of said jointly held property."[1] No value was assigned at that time to the above property. The other assets were distributed between the parties.
On the issue of spousal support, the entry stated that appellant was unemployed and that the court would reserve jurisdiction over spousal support for a period of five years. On the issue of child support, appellant was ordered to pay the total amount of $475 per month when he obtained employment. In arriving at this amount, the entry imputed income to appellant in the amount of $12,700 per year. Worksheets accompanied the 1995 entry.
The 1995 entry itself specifically indicated that the reason for appellant's unemployment was his incarceration. Other material in the record indicated that appellant allegedly became addicted to cocaine, had embezzled money from his employer and had been fired from his job as a chemical engineer. Prior to being fired, appellant was earning $70,000 per year.
In the 1995 entry, the trial court also ordered the transfer of appellant's IRA to appellee to be used by her for "family purposes." Neither party took an appeal of the 1995 entry.
On May 13, 1996, appellee filed a Civ.R. 60(B) motion for relief from judgment in regards to the 1995 entry, contending that the entry did not completely divide the parties' marital property. In the motion, appellee also indicated that she wished to seek a divorce from appellant and that the undivided real and personal property at issue was now subject to division in the divorce proceedings. As part of her prayer, she asked the trial court to vacate that portion of the 1995 entry that related to the jointly owned property at issue. The trial court ultimately denied appellee's Civ.R. 60(B) motion. On January 3, 1997, appellee filed a combined motion which sought to modify the 1995 entry as to the property division and to modify spousal support.[2]
Within the motion's content, if not its title, appellee additionally sought an order modifying the 1995 child support order. Specifically, her affidavit alleged that the children had received no support from appellant since the 1995 entry. The motion further stated appellee desired to sell certain portions of the real property at issue in order to support the children.
After several continuances at appellant's request, appellee's January 1996 motion came before a magistrate for hearing on July 11, 1997. Appellant was not present, apparently due to his incarceration. He was represented by counsel who asked to withdraw due to lack of payment; however, the magistrate did not permit counsel to withdraw as a result of the numerous delays already attributed to appellant. Specific provisions were made by the magistrate to allow appellant to subsequently submit testimony by deposition; nevertheless, no deposition testimony from appellant was ever filed. Thus, the magistrate only received testimony from appellee prior to rendering his decision.
At this 1997 hearing, appellee testified, among other things, to events that preceded the 1995 entry, focusing on the alleged financial misconduct of appellant. She also testified to the individual values of the three parcels of real property at issue, with a resulting net value of $350,000.
After hearing all of the evidence, the magistrate found that appellant had engaged in financial misconduct which warranted an inequitable division of property. To that end, the magistrate recommended that appellee be awarded appellant's interest in the real property at issue in lieu of child support, spousal supportand attorney fees. Appellant retained new counsel and timely filed objections to the magistrate's decision.
The trial court overruled appellant's objections and rendered its judgment in the matter on May 18, 1998 ("the 1998 entry").[3] Generally, the trial court approved of the magistrate's decision, and found that appellant had indeed engaged in financial misconduct. Thus, the trial court ordered that appellee be awarded appellant's entire existing interest in the real property at issue "in lieu of child support, spousal support and attorney fees." The trial court also awarded appellee the limited remaining personal property at issue.
Appellant perfected a timely appeal, asserting three assignments of error for our consideration:
 "[1.] THE TRIAL COURT ABUSED ITS DISCRETION IN THE DIVISION OF MARITAL ASSETS.
 "[2.] EXPERT TESTIMONY SHOULD HAVE BEEN TAKEN TO DETERMINE THE RELATIVE VALUES OF THE REAL PROPERTY IN THIS CASE.
 "[3.] THE TRIAL COURT ERRED BY ALLOWING PRESENTATION OF EVIDENCE BY APPELLEE, BARBARA KIDON[,] WITHOUT ALLOWING ANY TESTIMONY OF APPELLANT, WILLIAM KIDON, EITHER BY DEPOSITION OR AT THE HEARING DUE TO HIS INCARCERATION."
In his first assignment of error, appellant argues that the trial court abused its discretion and committed reversible error by dividing the parties' marital assets in such a way that appellant was left destitute while appellee gained a windfall. Thus, it is only the amount of the division which he assigns as error. No argumentation is raised in regard to the award of attorney fees or the personal property. Appellant's sole concern is the three parcels of real property.
Appellant's sub-theory is that the unequal division of marital property was equivalent to a child support and spousal support award. His argument continues that the court failed to observe the respective statutory guidelines regarding such support awards. In particular, he focuses on the lack of a finding of a change in circumstance since the 1995 judgment entry for either a child or a spousal award.
For the reasons which follow, we disagree with those conclusions. Specifically, we hold that, in order to make its determinations in the 1998 judgment entry, the trial court was not required to find a change of circumstances because there had been no award of child and spousal support in the 1998 judgment entry.
In order to address the substance of appellant's first assignment and its sub-issue, it is necessary to focus on the status of the 1995 entry of separation. Pursuant to R.C. 3105.17.1(B), when a party in a legal separation proceeding asks the court to make a determination as to what property is marital property and what property is separate property, the court may do so. After the court makes such a determination, it is required to divide the marital and separate property equitably between the spouses in accordance with the provisions of R.C. 3105.17.1.
It can be generally surmised that the 1995 entry of legal separation was premised on the idea that appellant might be able to get his act together and become functional.[4] That was probably why the parties requested that the court not make a final division of the bulk of the real estate assets. Instead they asked the court to reserve its jurisdiction over "jointly held property * * *." In addition, that was also probably why the parties requested that the court reserve jurisdiction over spousal support and not impose spousal support beyond giving permission to use certain assets for "family purposes." The hoped for prospect of appellant's rehabilitation was also probably why the designated monthly amount of child support was suspended. When it became apparent that no rehabilitation was going to occur on the part of appellant, appellee sought finality and invoked the jurisdiction reserved to the court.
As previously indicated, although the 1995 entry did divide some assets by agreement of the parties, the court merely maintained the status quo regarding the property as follows:
 "The Court further finds that the parties have agreed that they will continue to co-own the following marital assets:
"* * *
 "IT IS FURTHER ORDERED AND ADJUDGED that the Court has continuing jurisdiction over jointly held property, including the real estate set forth above and set forth below, to deal with conflicts which may arise regarding the handling or disposition of said jointly held property."
However, the language in the subsequent 1998 entry indicated the court was not making a division of the jointly held marital property. "In lieu of child support, spousal support, and attorney fees, Mrs. Kidon is hereby awarded Mr. Kidon's interest in the following properties: [the three properties at issue]." Thus, there was no child or spousal support awards. Instead, there was an unequal property division which the court justified on the basis that there would be no child or spousal support award. Appellant argues in reference to both spousal and child support that in doing so, the court erred because it failed to find a change of circumstances since the 1995 order and it failed to follow the appropriate support guidelines.
Nevertheless, appellant makes much of the court's projection of future child support. The record reflects the following findings of fact in the 1998 entry:
 "32. Mr. Kidon was earning $70,000 at the time of his employment with Avery was terminated. Mrs. Kidon is presently earning approximately $14,000. Child support for two children with the combined income of $84,000 would be $14,589 per year. Mr. Kidon's obligation would be 83% or $12,108 a year for both children. Mr. Kidon's child support obligation until each child reaches the age of 18 years is projected at $139,242. (Emphasis added.)
However, the court's calculations are clearly labeled as a projection and not as an order. This reference to the potential future child support obligation was made in the context of demonstrating the magnitude of the financial burden which would now be carried by appellee. The calculation itself is simply part of the justification for the unequal division of marital property. By itself, it did not constitute a child support order.
In the same vein, appellant argues that the court could not change the $12,700 income imputed to him in the 1995 entry. His theory is that the court made no finding of a change of circumstance since 1995; and, the court did not set out or meet the statutory requirements for the imputation of income in the amount of $70,000. Again, we point out that the statutory elements which must be satisfied for a change of circumstance or the imputation of income are only applicable if a child or spousal support award is made. We can not repeat often enough that there was no such award of child or spousal support. Instead, the court made a property allocation so that the parties would continue to co-own the real estate in question pending future determination of appellant's progress in rehabilitation.
While many of the trial court's findings addressed why it was unlikely that appellant would ever be in a position to provide ongoing spousal or child support, its overall import was to provide an explanation for the deviation from a fifty-fifty property split. The 1995 entry stated in relevant part:
 "18. Defendant was employed at Avery-Dennison for approximately five (5) years prior to the legal separation. He was fired by Avery for funds embezzled. At that time Mr. Kidon was earning $70,000 per year.
 "19. Mr. Kidon is addicted to cocaine. In addition to losing his job, it was necessary to repay Avery-Dennison $10,000 for funds embezzled. The funds were paid from marital savings.
 "20. Mr. Kidon has been hospitalized for his drug addition [sic] several times.
 "21. Mr. Kidon has not had meaningful employment since 1993. He has been in and out of jail since then.
 "22. Defendant has not provided any support for the Plaintiff or the two minor children since 1993.
 "23. Mr. Kidon incurred debt on the home equity line of credit in 1993. The amount of debt incurred is not known.
 "24. Mrs. Kidon had a separate checking account. Mr. Kidon forged her name on her checks in the amount of approximately $800. He also used her credit cards and took $100 in bonds.
 "25. Mrs. Kidon used her IRA's for herself and her children. She incurred a 10% penalty to withdraw the IRA's and also incurred taxes on the IRA's.
 "26. Mrs. Kidon was also awarded Mr. Kidon's IRA's. The Qualified Domestic Relations Order regarding his IRA's was not filed until July 10, 1997. Mrs. Kidon will require these funds to support herself and the children. She will incur penalties and taxes on these funds.
 "27. The judgment Entry/Legal Separation provides each parties were awarded any life insurance policies in their respective names. Plaintiff has paid the premiums on Defendant's policies which she owns. Plaintiff wishes to keep these policies in place so that the children will have funds for college education.
 "28. Plaintiff has significant debt. At least part of the debt results from Defendant's failure to cooperate in the transfer of the IRA accounts and his failure to provide support to Plaintiff for the children.
 "29. Defendant has demonstrated total financial irresponsibility by his conduct, i.e. his employment termination; his drug addiction; his inability/refusal to provide support for even the minor children since the time of the legal separation; his present inability to post bond; his likely incarceration on the pending criminal charges.
"* * *
 "32. Mr. Kidon was earning $70,000 at the time his employment with Avery was terminated. Mrs. Kidon is presently earning approximately $14,000. Child support for two children with the combined income of $84,000 would be $14,589 per year. Mr. Kidon's obligation would be 83% or $12,108 a year for both children. Mr. Kidon's child support obligation until each child reaches the age of 18 is projected at $139,242."
In addressing the value of the real estate at issue, the court found the net equity for the three properties to be $350,000. Thus, an equal division would amount to $175,000 each. The court also found that there was $3,386.00 due to appellee for attorney fees.
Our own calculations show that during the years that the child support of $475 was suspended, an approximate $14,000 to $16,000 shortfall was created for appellee to deal with as best she could. If child support had been formally ordered in the trial court's entry of September 8, 1995 until the parties' boys had reached majority, it is obvious that the total amount owing under those circumstances by appellant would have been a significant amount totaling several thousands of dollars. Appellee does not attempt to argue that the court could retroactively impose an arrearage for child support upon appellant for that amount. Nevertheless, the court could certainly consider that the dissipation of marital assets and the occurrence of appellee's present personal debt were due to appellant's financial irresponsibility, both before and after 1995. If the court had ignored the impact of appellant's conduct on the family assets, and had divided the remaining marital assets in a fifty-fifty fashion, appellant would reap a windfall at appellee's expense. We believe that this situation is precisely the one contemplated by R.C. 3105.18(n), "[a]ny other factor that the court expressly finds to be relevant and equitable." The court expressly found appellant's conduct to be financially irresponsible.
Appellant disputes the evidentiary basis for the court's finding of financial irresponsibility by arguing that the evidence of pre-1995 events should not have been admitted or considered in the 1998 judgment. He again argues that his former income of $70,000 in 1995 cannot be used to impute current income; and finally, he argues that expert testimony regarding the real estate values for the three parcels was required.
In arguing against the findings of financial responsibility, appellant is essentially raising an evidential issue. His claim is that the testimony concerning his behavior which predated the 1995 entry should have not have been admissible because it was subsumed in the 1995 entry. However, as was previously pointed out, by request and agreement of the parties, the property was not divided and the court expressly retained jurisdiction over the three pieces of real estate. Thus, the 1995 entry was intended to be subject to change in this respect. Evidence predating that entry could be admitted because the property had not been divided in the 1995 entry. The trial court was, therefore, correct in allowing such evidence to be admitted and considered.
Appellant's argument that expert testimony was required regarding the real estate values is contrary to existing law. Cityof Jackson v. Hill (Nov. 22, 1996), Jackson App. No. 95CA774, unreported, 1996 Ohio App. LEXIS 5382. Appellee testified in the form of an opinion as to a specific value for each of the three pieces of property. There was no testimony contra. While expert testimony is always a bonus in such situations, it is not a requirement. Further, appellant was not prevented from submitting his own expert testimony in that regard. He failed to do so. We point to the record where it shows that the magistrate at that 1997 hearing went to considerable trouble to provide a schedule and an opportunity for appellant to submit his own deposition testimony and any other evidential material on the issues raised in the 1997 hearing. That opportunity was never exercised by appellant, and he cannot now complain that the testimony of appellee was insufficient.
As to the change of circumstance and imputed income arguments, they fail for the same reason previously discussed; i.e., no actual award of support, child or spousal, was made in 1998. Appellant's first assignment of error is not well-taken.
In the second assignment, appellant repeats his argument that the trial court erred by relying on appellee's testimony as to the value of the real and personal property at issue. He now claims the court should have insisted on the presentation of expert testimony on the value of the property. However, that argument is without merit for the reasons previously given.
In the third assignment of error, appellant contends that he was denied his due process rights because the hearing on appellee's motion took place without him and because he was represented by ineffective counsel. Again, we note that the record clearly demonstrates that despite numerous prior delays and continuances given at his request, appellant's counsel indicated on the day of trial that appellant was not going to be present and that counsel wanted to withdraw due to lack of payment.
However, the record also indicates that the attorney was familiar with the facts of the case; that he was able to competently cross-examine and raise relevant objections; and that, in fact, he secured the opportunity for his client to submit further evidence through deposition or other means. We fail to see any ineffectiveness.
The record does not reflect the reasons as to why appellant failed to take advantage of those opportunities. As such, there was for all intent and purpose, a waiver by appellant of any injustice that occurred because of his failure to be present at the 1997 hearing. This is a civil matter, appellant's counsel was present, and there was no issue of notice or service. There is no inherent constitutional right to be personally present in a civil matter. State v. Williams (Dec. 24, 1998), Trumbull App. No. 97-T-0148,
unreported, 1998 Ohio App. LEXIS 6299. Further the facts of this case do not set forth any exception which requires reparation. Any denial of appellant's due process rights was self-inflicted. The third assignment is without merit.
The judgment of the trial court is hereby affirmed.
FORD, P.J.,
O'NEILL, J., (JOSEPH), Ret., Seventh Appellate District, sitting by assignment, concur.
[1] Although there were some items of personal property, such as the tractor, the present dispute centers on the three parcels of real estate.
[2] Although we do not have a copy of appellee's complaint for divorce before us, it was apparently filed during this general time frame. It would appear that no prayer was made within that pleading to divide the subject property. Instead, appellee sought this relief under the continuing jurisdiction of the court pursuant to the 1995 separation entry.
[3] The trial court filed a subsequent nunc pro tunc
order that contained a more detailed description of the real property at issue in this case.
[4] There is no any dispute that the 1995 entry was negotiated and agreed to by the parties.